# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| KEITH CARROLL, )<br>)<br>*Plaintiff,* )<br>v. )<br>)<br>FEDFINANCIAL FEDERAL CREDIT UNION, )<br>)<br>*Defendant.* )<br>)<br>) | Civil No. 1:17-cv-1361<br><br>Hon. Liam O'Grady |

## MEMORANDUM OPINION & ORDER

Currently before the Court is Defendant FedFinancial Federal Credit Union's Motion to Dismiss (Dkt. 13). The Court has considered the evidence and the pleadings, and finds good cause to **DENY** Defendant's motion.

### I. Background

Plaintiff, Mr. Keith Carroll, is a permanently blind resident of the Washington, D.C. area who uses screen reading software to navigate the Internet. Dkt. 11 at 2. Defendant FedFinancial Federal Credit Union ("FFCU") is a community-based, not-for-profit, member-owned, federally-chartered credit union with a branch in Silver Spring, Maryland. *See* Dkt. 13 at 2. Defendant operates a website that offers information about Defendant, including contact information and details regarding membership. *See generally* fedfinancial.org.

In late November 2017, Plaintiff filed this action, claiming that Defendant's website violates Title III of the Americans with Disabilities Act ("ADA"). *See* Dkt. 11 at 13. Plaintiff alleges that he attempted to access Defendant's website to learn about the credit union's services and locations, but was denied equal access to the website due to numerous accessibility barriers.

1

including linked images missing alternative text, redundant links, and empty or missing form labels. *See id.* at 12-13. Because of these access barriers, Plaintiff was deterred from using Defendant's website and from visiting Defendant's credit union location. *Id.*

After Defendant filed a Motion to Dismiss, Plaintiff filed an Amended Complaint. Defendant's Motion to Dismiss the Amended Complaint (Dkt. 13) is now before the Court. Defendant seeks dismissal of Plaintiff's claims due to lack of personal jurisdiction, improper venue, and failure to state a claim. *See* Dkt. 13 at 1. Defendant withdrew a previously-asserted argument related to whether Plaintiff was eligible for membership in Defendant's credit union based on allegations made in the Amended Complaint. *Id.*[1]

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

---

[1] Although Defendant has withdrawn its argument that Plaintiff has failed to show injury in fact, the Court briefly notes that Plaintiff has alleged that he could be a member of Defendant's credit union. *See* Dkt. 11 at 2; *see also* Dkt. 15 at 1 ("Plaintiff falls within Defendant's defined field of membership based on his residence in the Washington, D.C. metropolitan area and more than twenty years of service to, and employment with, the federal government."). This distinguishes this case from recent similar cases in which courts have granted motions to dismiss. *See, e.g., Carroll v. Farmers & Miners Bank*, No. 2:17-cv-49, 2018 WL 1659481 (W.D. Va. Apr. 5, 2018) (finding that plaintiff failed to show an injury in fact or a real threat of future harm where plaintiff lived nearly 400 miles from the closest physical location belonging to defendant); *Carroll v. New People's Bank, Inc.*, 1:17-cv-44, 2018 WL 1659482 (W.D. Va. Apr. 5, 2018) (finding that plaintiff failed to show injury in fact or a real threat of future harm where plaintiff lived nearly 300 miles from the closest physical location); *Griffin v. Dep't of Labor Federal Credit Union*, 293 F. Supp. 3d 576 (E.D. Va. 2018) (finding that plaintiff failed to show a concrete injury where he could not allege that he was a member or could ever be a member of defendant's credit union); *Carroll v. ABNB Fed. Credit Union*, 2:17-cv-521, 2018 WL 1180317 (E.D. Va. Mar. 5, 2018) (same); *Carroll v. Northwest Fed. Credit Union*, 17-cv-1205 (E.D. Va. Jan. 26, 2018) (same); *Carroll v. Washington Gas Light Fed. Credit Union*, 17-cv-1201(E.D. Va. Apr. 4, 2018) (same); *Carroll v. Roanoke Valley Community Credit Union*, 7:17-cv-00469, 2018 WL 2921106 (W.D. Va. June 11, 2018) (same). Here, unlike the cases cited above, Plaintiff has the ability to become a member, and he therefore plausibly alleges harm arising from his inability to access information about Defendant's services and branch location.

8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

While "detailed factual allegations" are not required, Rule 8 demands that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

### III. Analysis

#### a. Personal Jurisdiction

Defendant FFCU contends that it is not a resident of Virginia, and that Plaintiff has not sufficiently pled a basis for personal jurisdiction. Dkt. 8 at 3. Defendant acknowledges that its field of membership includes individuals employed in the Washington D.C. and Baltimore metropolitan areas, that some of its members do actually reside in Virginia, and that it sends mailings to those Virginia members. *See id.* at 2 ("FedFinancial has a total of 6,240 members and 298 of those members live in Virginia."). However, because Defendant does not directly advertise to Virginia residents for *new* members, and because its only branch office is located in Silver Spring, Maryland, Defendant argues that personal jurisdiction does not exist. *See id.* at 2.

Courts can exercise personal jurisdiction over a defendant only if such jurisdiction is authorized by the long-arm statute of the state in which the district court sits and application of the relevant long-arm statute is consistent with the Due Process clause. *Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC*, 241 F. Supp. 3d 708, 714 (E.D. Va. 2017). The Virginia

3

long-arm statute provides for *in personam* jurisdiction over any person who "transact[s] any business in Virginia." *Zalatel v. Prisma Labs, Inc.*, 226 F. Supp. 3d 599, 605 (E.D. Va. 2016). Virginia's long arm statute extends the jurisdiction of its courts as far as federal due process permits, and therefore the statutory inquiry merges with the constitutional inquiry. *Id.* Accordingly, the Court will employ the well-established due process inquiry. *See Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S. P. A.*, 92 F. Supp. 3d 435, 440 (E.D. Va. 2015).

Under the Due Process Clause of the Fourteenth Amendment, a court may exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts" with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945). Fairness is the touchstone of the jurisdictional inquiry. *Liberty Mut.*, 92 F. Supp. 3d at 440. To determine whether specific jurisdiction comports with due process, the Court must consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable. *Id.* A defendant outside the forum state must have at least aimed its challenged conduct at the forum state. *Zalatel*, 226 F. Supp. 3d at 607.

Purposeful availment turns on whether the defendant had such "minimum contacts" with Virginia that it may be deemed to have purposefully availed itself of the privilege of conducting business under the laws of the Commonwealth. *Liberty Mut.* 92 F. Supp. 3d at 441. In the Internet context, the Fourth Circuit has established a test for determining whether specific jurisdiction exists over a nonresident defendant based on the defendant's Internet contacts with the forum. *See Thousand Oaks*, 241 F. Supp. 3d at 715 (citing *ALS Scan, Inc. v. Digital Service*

*Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002)). The Fourth Circuit adopted a "sliding scale" approach under which a state can exercise personal jurisdiction over a nonresident defendant when the defendant (1) directs electronic activity into the State; (2) with the manifested intent of engaging in business or other interactions within the State; and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. *Id.* at 715-16.

Here, the facts giving rise to Plaintiff's claims involve Defendant's website, on which Defendant holds itself out as providing services to federal employees and their family members "located in the *Washington, D.C.* and Baltimore, M.D. *Metropolitan Areas.*" *See* Dkt. 8 at 2 (emphasis added); *see also* https://www.fedfinancial.org/history-and-mission. Defendant posts information on its website with the intent of targeting members or potential members of its credit union, groups which undeniably include Virginia readers. Furthermore, Defendant acknowledges that it has approximately 298 members who reside in Virginia. This, in combination with Defendant's admitted mailing of advertisements to the Virginia residents who are members in its credit union, is sufficient to establish minimum contacts to support the exercise of personal jurisdiction, and to show that Defendant could have reasonably anticipated being brought into court in Virginia for claims arising from its services. *See Thousand Oaks*, 241 F. Supp. 3d at 717 n.8 ("The fact that Deep South Barrels admits to having 251 customers in Virginia, even though that is a small percentage of its total customer base, shows a consistent level of contact with Virginia residents."); *see also McNeil v. Biaggi Prods., LLC*, No. 3:15-cv-751, 2017 WL 2625069, at *8 (E.D. Va. June 16, 2017) (noting the importance, in a specific jurisdiction analysis, of posts directed at Virginia or Virginia users).

The Court thus turns to the second prong of the analysis, and finds that exercising jurisdiction over Defendant is constitutionally reasonable. The burden for Defendant to litigate in Virginia is minimal, Virginia has an interest in protecting its citizens from discrimination, and Plaintiff has an interest in obtaining relief here, as Virginia is his home state and the location from which he was allegedly prevented from acquiring information about Defendant's services and branch location. *See Liberty Mut.*, 92 F. Supp. 3d at 444.

### b. Improper Venue

Defendant also argues that venue is improper in the Eastern District of Virginia. Dkt. 8 at 14. Defendant claims that its maintenance of its website did not occur in this District, and therefore the events or omissions giving rise to this claim did not occur here. *Id.* Defendant believes this action should have been brought in the District of Maryland, as Defendant's only physical branch location is in Silver Spring. *Id.*

However, venue is proper under 28 U.S.C. § 1391(b)(2) as a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As explained above, Defendant maintains its website with the intent of targeting at least some Virginia readers, and Virginia is the location from which Plaintiff was prevented from acquiring information about Defendant's services and branch location. Thus the events or omissions giving rise to the claim occurred in Virginia, and venue is proper in this Court.

### c. Failure to State a Claim Upon Which Relief Can be Granted

As a third proposed basis for dismissal, Defendant argues that Plaintiff has failed to state a claim for several reasons. First, Defendant asserts that its website is fully compliant with the requirements of the ADA. Second, even if the website is not compliant, Defendant asserts that Title III does not apply because Title III is limited to physical spaces. Third, Defendant argues

that applying private sector web accessibility guidelines to the FFCU website would violate Due Process. The Court addresses each argument in turn.

### i. Compliance with Guidance from the Department of Justice

First, Defendant argues that its website is, in fact, accessible to the visually-impaired. Defendant argues that it has complied with the method suggested by the Department of Justice in its 2010 Advance Notice of Proposed Rulemaking in that Defendant's website "contains a link at the top of the page to 'Convenient Support' and a phone number . . . to contact the credit union." *See* Dkt. 8 at 15. However, the question of whether Defendant provides effective communication to visually-impaired persons through alternative means is an affirmative defense, and that inquiry is not ripe for resolution at the motion to dismiss stage. *See Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116, 2017 WL 5186354, at *9 (D.N.H. Nov. 8, 2017).

### ii. Title III's Applicability to Websites

Second, Defendant argues that websites, including the FFCU website, are not "places of public accommodation" under Title III of the ADA. *See* Dkt. 8 at 18. The Fourth Circuit has not addressed whether websites themselves constitute places of public accommodation for purposes of Title III, and other circuit courts are split on this question.

Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a website even without a connection to a physical space. *See Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. 2017) (explaining the circuit split); *see also Blue Apron*, 2017 WL 5186354 (finding, in accordance with First Circuit precedent, that the defendant's website constituted a place of public accommodation despite having no connection to a brick-and-mortar store). Courts in the Third, Sixth and Ninth Circuits, in contrast, have concluded that places of public accommodation must be physical spaces and "that goods and services provided by a

public accommodation must have a sufficient nexus to a physical place in order to be covered by the ADA." *See Winn Dixie*, 242 F. Supp. 3d at 1319. District courts in the Eleventh Circuit have similarly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. *See id.* at 1320 (relying on *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279 (11th Cir. 2002), in which the Eleventh Circuit held that the ADA covers intangible barriers such as those which restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges).

This Court, however, need not reach the question of whether a commercial website itself constitutes a "place of public accommodation" under the ADA, because the Court finds that Defendant's website is offered as a service or privilege of Defendant's brick-and-mortar location, and is subject to the requirements of Title III of the ADA on those grounds. This conclusion is consistent with a plain reading of Section 302(a) of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, which provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations *of* any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182 (emphasis added). To limit the ADA to discrimination in the provision of services occurring on or at the physical premises of a public accommodation would contradict this plain language of the statute. *See Gorecki v. Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *3 (C.D. Cal. June 15, 2017) ("Title III applies to the services of a place of public accommodation, not services *in* a place of public accommodation."); *Nat'l Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953-54 (N.D. Cal. 2006) (noting that the purpose of the statute is to bar actions or omissions

which impair a disabled person's "full enjoyment" of the services or goods of a covered accommodation).

District courts considering comparable factual situations have similarly found that websites are subject to the ADA when the website has a connection to physical premises of a public accommodation. *See Robles v. Yum! Brands, Inc.*, No. 2:16-cv-08211, 2018 WL 566781, at *4 (C.D. Cal. Jan. 24, 2018) (finding defendant's website and mobile application subject to accessibility regulations under the ADA where barriers deterred plaintiff from accessing defendant's brick-and-mortar location); *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017) (finding defendant's website "directly connected" to the defendant's physical stores, and that the website "augment[ed]" the physical locations by assisting customers in finding physical store locations, among other things); *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744, 2017 WL 6547902, at *4 (S.D.N.Y. Dec. 20, 2017) (holding that commercial websites qualify as public accommodations within the meaning of the ADA but noting that even if the ADA did not apply to commercial websites in general, "the ADA clearly applies to private commercial websites which . . . operate in tandem with the merchant's conventional (*i.e.*, brick and mortar) places of public accommodation.").

The Court's conclusion is therefore consistent not only with the holdings of many other courts,[2] but is also harmonious with Congress's widely acknowledged purpose in enacting the

---

[2] Defendant draws the Court's attention to *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd* 2004 U.S. App. LEXIS 5495 (4th Cir. Mar. 24, 2004), in which the court held that a chat room was not a "place of public accommodation" as defined under Title II, 42 U.S.C. § 2000a. In *Noah*, the court held that the statute's "consistent reference to actual physical structures points convincingly to the conclusion that the phrase does not include forums for entertainment that are not physical structures or locations." *Id.* at 541. The court acknowledged that Title II should be "read broadly to give effect to the statute's purpose, namely to eliminate the daily affront and humiliation caused by discriminatory denials of access to facilities ostensibly open to the general public," but the court concluded that the reach of Title II "cannot extend beyond actual physical facilities." *Id.* at 542 (internal citations omitted). Having reached this conclusion, the court found that an online chat room could not be construed as a "place of public accommodation," as it was not a physical structure and did not exist in a particular physical location. *Id.* at 544. In dicta, the *Noah* court reached a similar conclusion about Title III. *Id.* at 543-44.

9

ADA. *See, e.g., Del-Orden*, 2017 WL 6547902, at *9 ("Congress's purposes of adopting the ADA would be frustrated were the term 'public accommodation' given a narrow application, under which access to the vast world of Internet commerce would fall outside the statute's protection. Today, few areas are more integral to the economic and social mainstream of American life.") (internal citations omitted); *see also Nat'l Fed. of the Blind v. Scribd, Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) ("Now that the Internet plays such a critical role in the personal and professional lives of Americans, excluding disabled persons from access to covered entities that use it as their principal means of reaching the public would defeat the purpose of the important civil rights legislation.");[3] *see also Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012) ("In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of the purposes of the ADA in that it would prevent individuals with disabilities from fully enjoying the goods, services, privileges and advantages available indiscriminately to other members of the general public.") (internal quotations omitted).

Here, the Plaintiff has sufficiently alleged that Defendant's website is a service of Defendant's physical, brick-and-mortar location (i.e., the Silver Spring branch location). Plaintiff has alleged that Defendant's website "provides access to FedFinancial FCU's array of services, privileges, advantages, and accommodations including, but not limited to, a branch locator for the FedFinancial FCU facility, shared branch locations, and ATMs so that a potential customer may determine from the website the closest location for them to visit, descriptions of its types of banking services and accounts, online banking and bills pay services, loan information and

---

However, the court in *Noah* considered an online chat room without any connection to a physical place of public accommodation. The court did not reach the issue presently in dispute: whether ADA compliance is required for a website offered in connection with, as a service of, an entity's physical place of public accommodation.

[3] The court in *Scribd* also noted that Congress intended the statute to be responsive to changes in technology. *Id.* at 573 (noting that the goal of the ADA is "full participation in and access to all aspects of society").

10

documents, location service hours, special offers, an "About" page so that users may determine FedFinancial FCU's services . . . and qualifications for membership." Dkt. 11 at 4. Plaintiff has also alleged that the access barriers on Defendant's website have prevented him from, among other things, visiting Defendant's physical location. *See id.* at 13.

The facts of this case are similar to those presented to the court in *Del-Orden v. Bonobos*. In *Del-Orden*, as here, the plaintiff adequately alleged that the website operated in tandem with the defendant's brick-and-mortar stores. The *Del-Orden* plaintiff also alleged that he was prevented from learning the physical location of defendant's stores due to the barriers on the defendant's site. *See Del-Orden*, at \*11. The court found that the site was "unquestionably a good, service, facility, or accommodation of a place of public accommodation." *Id; see also Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870 (N.D. Ohio 2018) (denying a motion to dismiss under similar factual circumstances, in which a blind plaintiff alleged a connection between the defendant's website and its brick-and-mortar stores sufficient to state a claim under Title III).[4]

Defendant argues that "there is nothing that requires any individual to do business with FedFinancial only over its website," and that use of its website is not "necessary or even helpful to facilitate the use of the brick-and-mortar places where FedFinancial does business." Dkt. 8 at 6, 23. Because Defendant's website does not offer special online promotional rates or other discounts associated with website use, "[n]othing on FedFinancial's website is needed for the full

---

[4] In another similar case, *Gathers v. 1-800-Flowers.com, Inc.*, No. 17-cv-10273, 2018 WL 839381, at \*3 (D. Mass. 2018), the court found that a blind plaintiff had stated a claim under Title III where the alleged barriers had a much weaker nexus to a physical place of public accommodation. In *Gathers*, the court noted that the defendant's website was incompatible with screen-reading software, resulting in blind persons being unable to read certain messages with screen readers, encountering pictures without matching written descriptions, and being unable to locate where to type in credit card information. *See id.* at \*4. There were no allegations that barriers on the website prevented the blind persons from equal access to defendant's physical branch location. Nevertheless, the court found that the plaintiff's allegations were sufficient to survive a motion to dismiss. *Id.* In *Gathers*, the defendant did not dispute that its websites were places of public accommodation subject to regulation by Title III of the ADA. *Id.* at \*1, n.1.

enjoyment of FedFinancial's 'places.'" *Id.* at 7. Therefore, Defendant argues, "Title III does not apply to FedFinancial's website." *Id.*

But Defendant mischaracterizes the harm alleged by Plaintiff. Plaintiff has alleged that the accessibility barriers on Defendant's website prevent him from acquiring full information about Defendant's services. *See* Dkt. 11 at 12-13 ("Despite several attempts to use fedfinancial.org in recent months, the numerous access barriers contained on FedFinancial FCU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing FedFinancial FCU's website."). And Defendant's argument ignores the fact that Plaintiff has been denied equal access to information that would enable him to visit Defendant's brick-and-mortar location. For these reasons, the Court finds that Plaintiff has successfully stated a claim for a violation of Title III arising from the access barriers on Defendant's website.

### iii. Web Content Accessibility Guidelines

Finally, Defendant argues that applying private sector web content guidelines (specifically, the Web Content Accessibility Guidelines)[5] would violate Due Process. *See* Dkt. 19 at 3. But Plaintiff does not ask this Court to require Defendant's compliance with these or other specific guidelines. Plaintiff merely refers to the guidelines as a "well-established" standard for making websites accessible to visually-impaired people. Dkt. 11 at 5. The cause of action identified in the Amended Complaint makes clear that Plaintiff alleges violations of the ADA, not of the WCAG. Therefore the Court need not, and does not, apply private sector W3C guidelines to its analysis of Defendant's compliance with ADA requirements. *See Gathers*, 2018 WL 839381, at *3; *but see Robles v. Domino's Pizza, LLC*, No. 16-06599, 2017 WL 1330216, at

---

[5] The guidelines, also referred to as "WCAG," are published by an international website standards organization, W3C. The Amended Complaint refers to version 2.0. *See* Dkt. 11 at 5.

*5 (C.D. Cal. Mar. 20, 2017) (plaintiff specifically alleged defendant's website was incompatible with WCAG, and requested that the court order the defendant to adopt a specific standard for web accessibility).

## IV. Conclusion

For these reasons, and for good cause shown, the Court hereby **DENIES** FedFinancial Federal Credit Union's Motion to Dismiss (Dkt. 13).

**IT IS SO ORDERED.**

June 25, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge